IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

SEAN CANTRELL, )
 )
    Plaintiff, )
 )
VS. ) CASE NO. _____
 ) JURY DEMAND
YATES SERVICES, LLC ) JUDGE _____
    Defendant. )
 )
 )

**COMPLAINT**

JURISDICTION:

1. This Honorable Court has jurisdiction of all of Plaintiff's retaliatory/wrongful discharge claim relating to his assertion of workers' compensation rights and his TDA/Disability Discrimination claims which arise from Tennessee statutory or common law, pursuant to 28 U.S.C. §1332 because of the complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

VENUE:

2. This Honorable Court has venue of this action pursuant to 28 U.S. C. §1391(a)(2) because Plaintiff resides in this District, Defendant has one or more business locations within the Middle District of Tennessee and all or at least a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

1

## THE PARTIES:

3. Plaintiff is a citizen and residence Rutherford County, Tennessee and has been at times pertinent to the facts of this cause.

4. On information and belief, Plaintiff submits that Defendant Yates Services, LLC has been a foreign corporation registered to do business in the state of Tennessee with a business location at 983 Nissan Drive, Smyrna, Rutherford County, Tennessee at all times relevant to the facts of this litigation.

## FACTS:

5. Plaintiff was employed by the Defendant as an associate metal finisher in Smyrna, Tennessee from June 4, 2012, through April 16, 2014.

6. Plaintiff suffered a work-related injury to his back and neck on February 28, 2014, while aggressively using a tool to remove a dent from a vehicle door when he felt pressure in the middle of his back. Plaintiff continued to work until the end of his shift at which time he went to the locker room to remove his work suit and while bending over to remove the work suit he felt a sharp pain in the middle of his back.

7. Plaintiff promptly reported his February 28, 2014, back and neck injury to his employer on March 1, 2014, specifically to his supervisor, Eric Tedder.

8. Following his report of injury, Plaintiff received from Defendant a panel of physicians pursuant to the Tennessee Worker's Compensation Act, from which he chose to be treated by Comprehensive Health Services (CHS). CHS is an on-site clinic that works under contract with Nissan, and is staffed by Dr. Matthew Walker and Dr. Gilbert Woodall. Plaintiff was treated by Dr. Gilbert Woodall and his nurse practitioners. This treatment was a workers' compensation benefit.

9. Plaintiff was seen by Candace Humes, NP at CHS on March 1, 2014, who diagnosed a sprain of left neck/trapezius area that she determined to be likely work-related and Plaintiff was placed on work restrictions of no working above left shoulder and no extending his neck until re-evaluated March, 3, 2014.

10. The next treatment Plaintiff received for his back and neck injuries was from Carley Clark, NP at CHS on March 3, 2014.

11. On March 3, 2014, Nurse Practitioner Clark determined that Plaintiff had trapezius and scapular sprains and that he was stalled in the recovery process. She also set work restrictions that Plaintiff must keep his elbow near his waist while working, and no working above left shoulder.

12. On March 10, 2014, Plaintiff was again seen by Nurse Practitioner Clark, which was an unscheduled visit due to Plaintiff's condition worsening.

13. On March 10, 2014, Plaintiff went to his first physical therapy visit and reported numbness into the pointer, middle, and ring fingers on his left hand. He also reported pain in the right shoulder. He was found to have left scapular trapezius sprain/left bicep tendonitis and it was noted that he was stalled in the recovery process.

14. On March 10, 2014, Nurse Practitioner Clark placed temporary work restrictions of no working with outstretched arm, no working above shoulder level, and no push/pull of more than ten pounds.

15. On March 11, 2014, Plaintiff was seen by Dr. Gilbert Woodall at CHS. Dr. Woodall noted that the injury was not "behaving" as a suspected muscle strain, but that it was progressing as a cervical H&P (believed to be herniated nucleus pulposus) involving the left C7

3

nerve root and with given history, this would be primarily idiopathic and degenerative and not work-related. He explained that Plaintiff's symptoms simply were noticed during work activity.

16. Dr. Woodall discussed his assessment with Plaintiff and stated his belief that the workers' compensation claim would be denied. Plaintiff was advised by Dr. Woodall to seek care for cervical SC radiculopathy as a personal non-work condition.

17. On March 11, 2014, Plaintiff was advised by Dr. Woodall that he would need to apply for short-term disability benefits (STD) through his primary-care physician and indicated that Plaintiff needed an MRI. STD is available to Defendant's employees as a non-workers' compensation benefit.

18. Before Plaintiff left his appointment with Dr. Woodall on March 11, 2014, he was provided a panel of physicians pursuant to the Tennessee Workers' Compensation Act.

19. Plaintiff selected Dr. Shibayama and contacted his office to schedule an MRI based upon the work-related injury. Plaintiff was informed by Dr. Shibayama's office that he needed to contact the workers' compensation insurance carrier to schedule the MRI.

20. Plaintiff did not know what actions to take since he was advised that Dr. Woodall's opinion was that the injury was not work-related; however, he was provided a panel of physicians, selected a physician, and could not schedule an appointment based upon the position the Employer took that the injury sustained by the Plaintiff was not work related.

21. Plaintiff was advised to apply for short-term disability; however, he could not, in good faith, complete the short-term disability application because the injury he sustained on February 28, 2014, was, in fact, work-related.

22. Plaintiff retained the services of an attorney, David Brock East, on March 13, 2014, to assist him with his workers' compensation claim.

4

23.   Plaintiff was contacted by Kelly Russ, a human resources representative from the Defendant, on or about March 28, 2014, to inquire as to what can be done to salvage the Plaintiff's employment with the Defendant.

24.   On Monday, March 31, 2014, Plaintiff contacted Kelly Russ and advised that he had retained the services of an attorney and that they were contesting the Employer's position that his injury was not work related.

25.   On April 11, 2014, a telephone conference was held with the Plaintiff, Plaintiff's attorney, Brock East, and Travelers' representative Ashley Hayes-Batey, at which time Plaintiff stated his injury was work-related.

26.   On April 11, 2014, after the telephone conference, the Employer filed a Notice of Denial of the Claim which reported that compensation was denied, effective March 31, 2014, based upon the following reason: "Claim is denied due to idiopathic condition and not major contributing cause. Panel physician opined that injured workers' comp condition was idiopathic and not work-related."

27.   On April 16, 2014, a human resources representative employed by the Defendant contacted Plaintiff and advised his employment had been terminated based upon his failure to turn in short-term disability paperwork (application for STD).

28.   On April 17, 2014, Plaintiff was then seen by his primary-care physician, Dr. Chris Beckman. Dr. Beckman opined that Plaintiff's injuries were work related.

29.   Plaintiff was terminated because he asserted his rights pursuant to the Tennessee Workers' Compensation Act.

5

30. Plaintiff filed a Request for Assistance pursuant to the Tennessee Workers' Compensation Act on May 30, 2014, to require the Defendant to provide benefits provided by the Act.

31. On July 30, 2014, Workers' Compensation Judge Jim Umstead found the February 28, 2014, injury to be work related and ordered the Defendant to pay for all medical treatment since the February 28, 2014, work-related injury, and Defendant was to provide Plaintiff with a panel of physicians who are orthopaedic specialists.

32. After the Tennessee Department of Labor's decision and findings, the Defendant did not reinstate the Plaintiff's employment.

33. As a direct and proximate result of Plaintiff's termination, he has suffered a loss of income, retrospectively and prospectively, and a loss of employment benefits. He has additionally suffered humiliation, embarrassment, and mental anguish.

## RETALIATORY/WRONGFUL DISCHARGE CLAIM RELATING TO ASSERTION OF WORKERS' COMPENSATION RIGHTS:

34. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

35. The sole reason for Plaintiff's discharge by Defendant was his attempt to exercise his statutory and common law rights to fully assert a claim pursuant to the Tennessee Workers' Compensation Act (TWCA).

36. Alternatively, Plaintiff submits that a substantial motivating factor in Defendant's decision to terminate his employment was his attempted assertion of his rights pursuant to the TWCA and common law.

37. It is a clear violation of public policy for Plaintiff to be terminated for having attempted to exercise his statutory and common law rights pursuant to the TWCA.

38. Defendant's termination of Plaintiff for having attempted to exercise his right pursuant to the TWCA was an intentional, willful and reckless act.

39. Plaintiff submits that, in addition to compensation for back pay and other damages, he should be fully restored to the position he would have held had he not been terminated with all of the compensation, benefits, terms and conditions and privileges he would have had but for his termination.

40. Alternatively, in addition to back pay and other damages, Plaintiff submits that he should be awarded front pay and the value of lost benefits for a period of ten years from the date of the trial.

41. Wherefore, for Plaintiff's retaliatory/wrongful discharge claim resulting from his assertion of workers' compensation rights, he demands compensatory damages in the amount of ONE MILLION and 00/100 DOLLARS if his employment is restored, or ONE MILLION, TWO-HUNDRED, FIFTY THOUSAND and 00/100 DOLLARS if it is not. Plaintiff also demands punitive damages in the amount of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 DOLLARS.

## TDA/DISABILITY DISCRIMINATION CLAIM:

42. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

43. The Defendant, for purposes of the THRA and TDA was Plaintiff's employer as that term is defined at T.C.A. §4-21-102(4) because Defendant has employed eight or more persons at all times relevant to this action.

44. The TDA embodies the rights and definitions of the ADA.

45. Pursuant to T.C.A. §8-50-103(a), the TDA prohibits discrimination in hiring and firing based solely on any physical, mental or visual handicap.

46. For ADA/TDA purposes, Plaintiff has been a qualified individual with a "disability" at all times relevant to this litigation because of his back back and neck injury.

47. The back and neck injury suffered by Plaintiff constitutes a "disability" for ADA /TDA purposes because it substantially limited or affected one or more of Plaintiff's major life activities.

48. At the time Plaintiff was terminated, he had a record of having a disability based upon his workplace injury to his neck and back, the specifics of which were well known by agents of the Defendant as Plaintiff had already received treatment with the onsite medical personnel (CHS/Dr. Woodall).

49. Plaintiff's termination also violated the ADA and TDA because it was proximately caused by Defendant regarding Plaintiff as being disabled.

50. Plaintiff's termination violates the ADA and TDA because it was directly and proximately caused by Plaintiff's having a disability and having a record of having a back and neck disability and by Defendant regarding Plaintiff as being disabled.

51. The actions of the Defendant as described herein constitute discrimination against Plaintiff, a qualified individual with a disability as to the terms, conditions, and privileges of employment in violation of 42 U.S.C. §12112(a) and the TDA.

52. As the direct and proximate result of Defendant's violation of the THRA and TDA for disability discrimination, Plaintiff seeks damages for the following:

    a. Back pay with interest thereon;

b.  The value of lost employment benefits with interest thereon;

c.  Damages for humiliation, embarrassment, and mental anguish in the amount of SEVEN HUNDRED, FIFTY THOUSAND and 00/100 DOLLARS which shall be additional to all other damages Plaintiff may be awarded;

d.  Restoration to his employment with the Defendant, along with all rights and privileges he would have possessed had he not been the victim of discrimination;

e.  Alternatively, if Plaintiff is not restored to his employment with the Defendant, he requests an additional award of front pay for a period of ten years from the date of trial;

f.  An award of attorney's fees, witness fees, and other litigation expenses, pursuant to T.C.A. §4-21-311(b).

53. Plaintiff further prays for general and equitable relief as may be deemed appropriate by the Court.

Respectfully submitted,

*[signature]*

BENJAMIN L. PARSLEY, III, BPR #26888
R. STEVEN WALDRON, BPR #2767
Attorneys for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365

*[signature]*

BROCK EAST, BPR #24406
Attorney for Plaintiff
McCARTER, CATRON & EAST
101 N. Maple Street
Murfreesboro, TN 37130
(615) 893-9255

9