# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SEAN CANTRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15-cv-00420 |
| ) | Judge Aleta A. Trauger |
| YATES SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The defendant, Yates Services, LLC, ("Yates"), has filed a Motion for Summary Judgment (Docket No. 19), to which the plaintiff, Sean Cantrell, has filed a Response (Docket No. 34), and Yates has filed a Reply (Docket No. 42). For the following reasons, the motion will be granted.

## UNDISPUTED FACTS[1]

Cantrell is a resident of Rutherford County, Tennessee, and a former employee of Yates, a foreign limited liability company. (Docket No. 8 ¶¶ 3–4.) Yates is a contractor providing a labor force to Nissan at Nissan's vehicle assembly plants in Smyrna and Decherd, Tennessee. On or around June 1, 2012, Yates hired Cantrell to work as a maintenance technician – also known as a "production associate" – at the Smyrna Plant. Among Cantrell's duties were performing metal finishing and working dents out of vehicles while they were still on the production line.

On February 28, 2014, Cantrell felt a pop in the middle of his back while he was pushing out a dent on a vehicle's door. Cantrell continued working, but at the end of his shift, when he

---

[1] Unless otherwise noted, the undisputed facts have been drawn from Cantrell's Response to Yates' Statement of Undisputed Material Facts (Docket No. 37) and Yates' Response to Cantrell's Statement of Additional Facts (Docket No. 43).

1

bent down to take off his paint suit, he felt a sharp pain, again in the middle of his back. The next day, Cantrell reported his injury to his supervisor, Eric Tedder. Tedder took Cantrell to a medical facility that was located onsite at the Smyrna plant. Cantrell was presented with a choice of health care providers, and he selected one identified as "CHS – Dr. Woodall/Dr. Walker." "CHS" referred to Comprehensive Health Services, an onsite provider at the plant. That day, March 1, 2014, Cantrell was examined by Candace Humes, a nurse practitioner for CHS. Humes diagnosed Cantrell as suffering from a scapula strain and identified the strain as work-related. On March 3, 2014, Cantrell saw another CHS nurse practitioner, Carley Clark. Clark diagnosed him with a scapula sprain and a trap sprain, and again noted that his injuries were work-related. Around this time, Yates completed a first notice of injury, which Yates provided to its workers' compensation insurance carrier, Traveler's. Traveler's acknowledged receipt of the first notice on March 5.

Clark returned Cantrell to work with a restriction of keeping his left elbow near his waist. Cantrell went back to the production line, but he reported that his injury was continuing to hurt him, and he was assigned to light duty work at a computer for the week. On March 10, Cantrell saw Clark again, and she again diagnosed him with a work-related sprain. Clark scheduled a follow-up appointment for Cantrell the next day, March 11, with Dr. Gilbert Woodall. Cantrell reported to the appointment and was examined by Dr. Woodall. Dr. Woodall concluded, contrary to the prior diagnoses, that Cantrell's injury was not work-related. Dr. Woodall informed Cantrell that any benefits related to the injury would therefore have to be filed under Cantrell's personal insurance. Dr. Woodall walked Cantrell to Yates' human resources office, where the doctor told the human resources personnel present that any workers' compensation claim by Cantrell arising out of the injury would be denied and that Cantrell, instead, needed to

apply for short-term disability benefits.

Human resources provided Cantrell with paperwork related to short-term disability benefits and instructed him to complete the paperwork within fifteen days. One page of the papers featured a flow chart, labeled "Yates Services, LLC Short Term Disability Process," outlining the steps associated with applying for short-term disability benefits and taking corresponding leave from work. One item in the flow chart included the statement, "Failure to return [short-term disability] paperwork on time will result in medical termination." (Docket No. 19-2 at 10.)

Cantrell did not return the completed paperwork. He maintains that he believed that applying for short-term disability benefits would have amounted to admitting that his injury was not work-related, which he did not believe he could do in good faith.[2] The actual short-term disability claim form that Cantrell received on March 11, however, included fields asking the filer whether his injury was work-related and whether he had filed a workers' compensation claim. (*Id.* at 11.) The form therefore, in fact, could have been truthfully filled out for a work-related injury – though it may be that such a claim would have been denied. At deposition, Cantrell conceded that he could have filled out the form to indicate that his injury was work-related and that no one at Yates told him to fill it out otherwise. (*Id.* at 224–25.)

Cantrell's attendance records show that he was absent for medical reasons – that is to say, due to his back injury – for every work day from March 17, 2014, through April 11, 2014. (Docket No. 22-2 at 10.) On March 28, 2014, Cantrell received a voicemail from Kelly Russ, an employee in Yates' human resources department. Russ requested that Cantrell call her back

---

[2] Cantrell was apparently not alone in this belief. At deposition, Melissa Harrell, who worked for Yates as a workers' compensation and safety nurse at the time of Cantrell's injury, was asked "Would you agree that an employee cannot receive or file for short-term disability on a work-related injury?" She replied, "Yes." (Docket No. 36-10 at 57.)

3

"immediately" in order to "see what we can do to possibly salvage your job here." On or about March 31, 2014, Cantrell left Russ a voicemail informing her that he had hired an attorney and was contesting the conclusion that his injury was not work-related.

Yates' Employee Handbook at the time provided that "[e]mployee absences can sometimes lead to corrective action unless the reason for absence is protected by law or policy and approved." Among the listed types of "Protected Absences" was "disability leave (work or non-work related)." The appropriate corrective action for three consecutive unapproved absences, according to the Handbook, was administrative, or automatic, termination. (Docket 22-1 at 12–13.) On April 11, 2014, Traveler's informed Cantrell that it was denying his workers' compensation claim. Yates argues that, because Cantrell's workers' compensation claim had been denied, and because Cantrell refused to fill out a short-term disability claim form, his March and April medical absences were unexcused, not "protected" ones. On April 16, 2014, Yates terminated Cantrell. Cantrell admits that, at the time, he could not yet perform his job duties without significant restrictions.[3]

On April 14, 2015, Cantrell filed the Complaint in this action under the court's diversity jurisdiction, pleading claims of retaliatory discharge related to his assertion of his workers' compensation rights and termination in violation of the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103. (Docket No. 1.) Following discovery, Yates filed a Motion for Summary Judgment on both claims. (Docket No. 19.)

---

[3] Cantrell continued to dispute the conclusion that his injury was not related to his work, and, on July 30, 2014, the Tennessee Department of Labor concluded that he had, in fact, suffered a work-related injury compensable under workers' compensation and awarded him benefits accordingly. Cantrell eventually recovered sufficiently from his injury that his period of disability ended on September 23, 2014. He sought to return to work at Yates, but Yates did not respond to his attempts to reinitiate contact.

4

## LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

### *I. Retaliatory Discharge*

Tennessee recognizes the doctrine of employment at will, under which either party to an employment relationship may terminate employment with or without cause. *Hodges v. S.C. Toof*

*& Co.*, 833 S.W.2d 896, 899 (Tenn. 1992). The Tennessee Workers' Compensation Act ("TWCA") does not explicitly recognize a retaliatory discharge claim. However, the TWCA contains a provision stating that "[n]o contract or agreement, . . . or rule, regulation, or other device, shall in any manner operate to relieve any employer, in whole or in part, of obligations created by this chapter . . . ." Tenn. Code Ann. § 50-6-114. In *Clanton v. Cain–Sloan*, 677 S.W.2d 441 (Tenn. 1984), the Tennessee Supreme Court held that, when an employer discharges an at-will employee in retaliation for filing a workers' compensation claim, the retaliatory discharge constitutes an illegal "device" forbidden by § 50-6-114, thereby creating an exception to the employment at will doctrine. The court reasoned that "a cause of action for retaliatory discharge[,] although not explicitly created by the statute, is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature." *Id.* at 445.

In order to make out a *prima facie* case of retaliatory discharge related to workers' compensation, a plaintiff must show that "(1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 805 (Tenn. 2015) (citing *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993)). Yates argues that Cantrell cannot establish the fourth of these elements – that Cantrell's workers' compensation claim was a substantial factor in Yates' termination decision.

To show that a plaintiff's workers' compensation claim was a substantial factor in his termination, a plaintiff must show either direct or "compelling circumstantial" evidence of a

6

causal connection between the workers' compensation claim and the termination, not just the fact that the latter followed the former. *Frizzell v. Mohawk Indus.*, No. M200401598COAR3CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006) (citing *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App.1992)). Because courts have emphasized that the cause of action for retaliatory discharge is "a narrow exception to the employment at will doctrine," the evidence of causation must be compelling. *Abraham v. Cumberland-Swan, Inc.*, No. 01A01-9201-CH-000321992, 1992 WL 207775, at *3 (Tenn. Ct. App. Aug. 28, 1992). As such, courts have consistently held that temporal proximity between the claim and the termination is not by itself sufficient. *E.g.*, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (holding that the fact that plaintiff was fired three weeks after receiving workers' compensation was not sufficient evidence of a causal relationship).

Other than the temporal proximity of Cantrell's claim and his termination, and the fact that Yates was aware that Cantrell intended to contest the conclusion that his injury was not work-related, the only evidence Cantrell relies upon to suggest that the termination was retaliatory is that Yates' human resources personnel, along with Dr. Goodall, instructed Cantrell to file a short-term disability claim, and Yates based its decision to treat his absences as unexcused, in part, on his failure to do so. Cantrell repeatedly characterizes these facts as Yates terminating him because he refused to relinquish his workers' compensation rights. (Docket No. 34 at 2; Docket No. 35 at 6.) Cantrell has adduced no evidence, however, to support such a reading. Cantrell could have fully and truthfully filled out the disability claim form while simultaneously seeking workers' compensation, and he has cited no provision of law establishing that the mere act of submitting the truthful form would have precluded his workers'

compensation claim.

Cantrell also suggests that his filing a claim for short-term disability would have amounted to a violation of Tenn. Code Ann. § 56-53-103(a), which makes it unlawful for an insured person to "present[] . . . to an insurer . . . any information that the person knows to contain false representations, or representations the falsity of which the person has recklessly disregarded, as to any material fact, or that withholds or conceals a material fact, concerning . . . [a] claim for payment or benefit pursuant to any insurance policy." The touchstone of that statute, however, is falsity, and the short-term disability claim form was unambiguously drafted so that it could be filled out truthfully by an applicant whose injury was work-related.

Under Tennessee law, "an employer is entitled to terminate an at-will employee who is unable to perform satisfactorily because of physical infirmity, even though the physical infirmity resulted from an on-the-job compensable accident." *Birchett v. Nashville Co.*, No. M1999-00207-COA-R3-CV, 2000 WL 640895, at *4 (Tenn. Ct. App. May 19, 2000). The fact that Cantrell's injury was eventually held to be work-related does not change the fact that Yates was within its rights to terminate him after the injury caused him to miss twenty consecutive work days, and Cantrell remained, by both parties' accounts, unable to perform the functions of his job. Yates' instructing Cantrell to file a short-term disability claim does not change that equation because Cantrell has failed to show that the disability claim would have actually deprived him of his workers' compensation rights. Yates is entitled to summary judgment on this count.

*II. Tennessee Disability Act*

The TDA prohibits private employers from discriminating against employees "based solely on any physical, mental, or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment or impairs

the performance of the work involved." Tenn. Code Ann. § 8-50-103(a). A claim brought under the TDA is analyzed pursuant to the same general principles as those utilized for the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101–12117. *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013) (citing *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)); *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 n.5 (6th Cir. 2008) ("Both federal and Tennessee disability discrimination actions require the same analysis.") (citation omitted).

A plaintiff may prove employment discrimination under the ADA based upon circumstantial evidence using the *prima facie* case and burden shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). A *prima facie* termination case under the ADA "requires a plaintiff to establish that (1) he is a disabled person within the meaning of the ADA, (2) he is qualified, that is, with or without reasonable accommodation which he must describe, he is able to perform the essential functions of the job, and (3) the employer terminated him because of his disability." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995)). The ADA requires courts to consider the employer's business judgment when determining the essential functions of a job. *Keith v. Cty. of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013). The elements of a discrimination claim under the TDA are "very similar to those of the ADA, but do not include a 'reasonable accommodation' component.'" *Sloan v. Tate & Lyle Ingredients Ams. LLC*, No. 3:14-CV-406-TAV-HBG, 2016 WL 4179959, at *8 (E.D. Tenn. Aug. 5, 2016) (quoting *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841–42 (Tenn. Ct. App. 2009)).

Yates argues that Cantrell cannot establish that he was qualified for his position at the

Smyrna plant because, by his own admission, he was not physically capable of performing the labor required without substantial restrictions at the time he was terminated. Cantrell does not appear to dispute that, at the time of his termination, he was physically incapable of performing the duties of the position. Rather, he relies on the Sixth Circuit's statement in an unreported decision that "[r]equiring an employee with a [disability] to waive workers' compensation benefits otherwise available to non-disabled employees . . . smacks of exactly the type of discrimination that the ADA seeks to prevent." *Baker v. Windsor Republic Doors,* 414 F. App'x 764, 772 (6th Cir. 2011). In the cited passage, however, the *Baker* court was discussing whether the plaintiff had suffered an adverse employment action under the third prong of the ADA *prima facie* case. *Id.* at 772–73. Yates' argument is that Cantrell's claim fails under the second prong – whether Cantrell was qualified for the position.

If anything, *Baker* reaffirms the importance of showing that a plaintiff is capable of performing the job at issue. Although the *Baker* court agreed that the plaintiff in that case had suffered an adverse employment action, it nevertheless affirmed the district court's conclusion that the plaintiff was not entitled to recover on his ADA claim, because he could not show that he was qualified for the position in light of his medical limitations.[4] *Id.* at 776. Cantrell finds himself in a similar position. All of the available evidence, along with Cantrell's own admissions, support the conclusion that he could not perform the physical labor associated with the maintenance technician/production associate position while he was disabled. That he

---

[4] *Baker* involved a plaintiff who had been found to meet the definition of disability only because he was "regarded as" disabled by his employer, *see* 42 U.S.C. § 12102(2), although his condition did require some measure of accommodations. 414 F. App'x at 771. The Sixth Circuit has held that a plaintiff's "regarded as" status "obviate[s] the [defendant's] obligation to reasonably accommodate" the plaintiff. *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999). Accordingly, the analysis of the second prong of the *prima facie* ADA case for such plaintiffs skips any "reasonable accommodation" analysis. That issue was determinative in *Baker*. 414 F. App'x at 776.

suffered an adverse employment action is therefore immaterial, because his claim fails on other grounds. Yates is entitled to summary judgment on this count.

## **CONCLUSION**

For the foregoing reasons, the Motion to for Summary Judgment filed by Yates (Docket No. 19) will be granted. An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge